# In the United States Court of Federal Claims

No. 17-203V
(Filed under seal October 8, 2020)
(Reissued October 23, 2020)†

```
* * * * * * * * * * * * * * * * * * * * * * *
                                    *
L.P., by and through his parent     *    Vaccine Act; voluntary dismissal;
and natural guardian, MARY          *    attorneys' fees and costs, 42 U.S.C.
PETTY,                              *    § 300aa-15(e)(1); reasonable basis
                                    *    standard; preexisting condition;
             Petitioner,            *    failure to plead significant
                                    *    aggravation; looming statute of
      v.                            *    limitations deadline; Simmons v.
                                    *    Secretary decision.
SECRETARY OF HEALTH                 *
AND HUMAN SERVICES,                 *
                                    *
             Respondent.            *
                                    *
* * * * * * * * * * * * * * * * * * * * * * *
```

*Amy A. Senerth*, Muller Brazil, LLP, Dresher, Pa., for the petitioner.

*Voris E. Johnson, Jr.*, Senior Trial Attorney, Torts Branch, Civil Division, Department of Justice, with whom were *Chad A. Readler*, Acting Assistant Attorney General, *C. Salvatore D'Alessio*, Acting Director, and *Catharine E. Reeves*, Deputy Director, all of Washington, D.C., for the respondent.

## MEMORANDUM OPINION AND ORDER

WOLSKI, Senior Judge.

Petitioner Mary Petty has moved for review, pursuant to 42 U.S.C. § 300aa-12(e), of a special master's decision denying an award of attorneys' fees and costs. The request for fees and costs was filed after petitioner had acknowledged an inability to prove an entitlement to compensation and moved for the dismissal of

---

† Pursuant to Vaccine Rule 18(b) of the Rules of the United States Court of Federal Claims, the parties were given fourteen calendar days in which to object to the public disclosure of information contained in this opinion prior to its publication. No objection has been filed. Accordingly, the opinion is reissued for publication with some minor typographical and grammatical corrections.

her petition. After a review of the record, the Special Master concluded that no reasonable basis existed for filing the claim against the Secretary of Health and Human Services (Secretary). *L.P. v. Sec'y of Health & Human Servs.*, No. 17-203V, 2018 WL 1044952, at *3 (Fed. Cl. Spec. Mstr. Jan. 30, 2018) [hereinafter Fees Decision]. Thus, the Special Master declined to award petitioner's counsel fees and costs per 42 U.S.C. § 300aa-15(e)(1). For the reasons that follow, petitioner's motion for review is **DENIED** and the Special Master's decision is **SUSTAINED**.

## I. BACKGROUND

Petitioner filed the petition on behalf of her infant son, L.P., on February 10, 2017. *See* Pet., ECF No. 1. The petition sought compensation "for gastrointestinal injuries, and subsequent complications" which L.P. suffered, allegedly as a result of receiving two vaccinations on February 11, 2014, when he was two months old---the diphtheria, tetanus, and acellular pertussis (DTaP) and rotavirus vaccinations. *Id.* at 1 & ¶¶ 2, 8. The petition described L.P.'s health problems and medical visits through June 21, 2016, *see id.* ¶¶ 4–19, and was accompanied by 229 pages of medical records from the Cleveland Clinic and Akron Children's Hospital, Pet. Exs. 1–3, ECF Nos. 1-4 through 1-6. On the same day that the petition was filed, Ms. Petty also filed a statement indicating that she believed "all relevant medical records had been filed." Statement of Completion, ECF No. 4.

On May 5, 2017, three days before the scheduled initial status conference, the special master assigned to the case filed an order informing the parties of her assessment of the medical records submitted by petitioner. Order (May 5, 2017), ECF No. 8 [hereinafter Records Order]. The Special Master stated she "fails to see that if L.P. had any vaccine injury, it lasted more than six months" and added that "since L.P. had gastroesophageal reflux disease, green stools, fussiness, and gas before he received his vaccination, petitioner would need to amend her petition to allege significant aggravation." *Id.* at 1. Referencing the definition of significant aggravation from the Vaccine Act, 42 U.S.C. § 300aa-33(4), she noted that she "does not see a substantial deterioration of health in these records." *Id.*

The Special Master then accurately discussed the state of L.P.'s health as reflected in the filed records, the significant portions of which are summarized below. The medical records indicated that L.P. had suffered from gastrointestinal problems since shortly after his birth. On December 26, 2013, when he was a few weeks old, L.P. visited his pediatrician and petitioner reported his fussiness, gassiness following feedings, and green stools. *Id.* at 1–2; *see* Pet. Ex. 2 at 7. On January 10, 2014, L.P.'s doctor diagnosed him with "gastroesophageal reflux [disease] ('GERD')." Records Order at 2; Pet. Ex. 2 at 17–18. A few weeks later, on January 29, 2014, petitioner brought L.P. to see another pediatrician because of continuing stomach issues that had previously necessitated visits to an urgent care

facility and an emergency room. Records Order at 2; *see* Pet. Ex. 2 at 21. Petitioner reported that L.P. remained gassy and spits up after feedings, and that she noticed blood in his diaper the two previous days, and the doctor confirmed the diagnosis of GERD. *Id.*; Pet. Ex. 2 at 21–22.

On February 11, 2014, L.P. returned to the second pediatrician's office for his two-month check-up, and Ms. Petty reported that he had recently ceased spitting up and being fussy. Pet. Ex. 2 at 26; Records Order at 2. The doctor tested L.P.'s stool for blood and found none, Pet. Ex. 2 at 26, 28, and administered L.P.'s DTaP and rotavirus vaccinations, *id.* at 27; Records Order at 2. The next day, L.P. was brought to the Emergency Department of the Cleveland Clinic because he was vomiting and choking, and he had a liquid green stool. Records Order at 2–3; Pet. Ex. 2 at 66. After an examination and an ultrasound of his pyloric channel which showed it to be normal, he was diagnosed with "nausea and/or vomiting." Records Order at 3; Pet. Ex. 2 at 67–68. On February 21, 2014, L.P. returned to his pediatrician, and petitioner reported that he suffered from fussiness and loose stools, but that his post-vaccination vomiting lasted just one day. Records Order at 3; Pet. Ex. 2 at 34. *Id.* He continued to be diagnosed as having GERD. Pet. Ex. 2 at 36; Records Order at 3. Petitioner subsequently reported to physicians treating L.P. that his diarrhea persisted for two weeks after he was vaccinated. Pet. Ex. 2 at 108; Pet. Ex. 3 at 9; Records Order at 3, 5.

Petitioner's son continued to have gastrointestinal problems. At an April 16, 2014 appointment with a pediatrician, although his elimination was normal at that time, blood was detected in his stools. Records Order at 3; Pet. Ex. 2 at 40–41. The following week he had a consultation with a gastroenterologist, to whom petitioner recounted L.P.'s history of reflux and soft stools. Records Order at 3–4; Pet. Ex. 2 at 52–53. The gastroenterologist recognized that L.P. exhibited reflux symptoms and told petitioner that infant gastrointestinal reflux can get worse between four and six months of age. Records Order at 4; Pet. Ex. 2 at 53.

In November of 2015, L.P. was brought to see an allergist for a second allergist's opinion and was diagnosed as having mild eczema and food intolerance. Records Order at 5; Pet. Ex. 3 at 1–3. In recounting L.P.'s medical history, petitioner reported that he had suffered from diarrhea lasting six months following his vaccinations. Records Order at 5; Pet. Ex. 3 at 1. Three months later, L.P. was examined by a pediatrician because of an upper respiratory infection, and petitioner reported that her son had exhibited a change in appetite. Records Order at 5; Pet. Ex. 2 at 72. The doctor noted that L.P. did not have diarrhea or emesis. Records Order at 5; Pet. Ex. 2 at 72.

On March 31, 2016, at a follow-up doctor's visit concerning L.P.'s pneumonia, petitioner reported that L.P. "always had an issue with emesis while eating," and noted the possibility of "an exaggerated gag reflex." Pet. Ex. 2 at 100; Records

Order at 5. He had no diarrhea at that time. Pet. Ex. 2 at 100. At an April 26, 2016 doctor's visit, petitioner reported that L.P. "had a reaction to vaccines with severe diarrhea at 2 months old with no continued diarrhea, [failure to thrive], or severe infections since then." Pet. Ex. 2 at 108; Records Order at 6. The following week L.P. was brought by petitioner to see a pediatrician. Petitioner reported that L.P. had diarrhea for the previous week and a half. Pet. Ex. 2 at 118. He was diagnosed as having diarrhea, a food allergy, and other "allergic rhinitis." Records Order at 6; Pet. Ex. 2 at 118. One month later, on June 4, 2016, following a visit to the Emergency Department of the Cleveland Clinic, L.P. was brought back to the pediatrician's office and was diagnosed with cyclical vomiting associated with migraine. Pet. Ex. 2 at 131–32; Records Order at 6.

Two and a half weeks later, petitioner brought L.P. to see a pediatric gastroenterologist, and reported that L.P. "was overall doing fairly well until" January of that year, when he began having nighttime episodes of emesis---three times in January, twice in February, and once in three subsequent months. Pet. Ex. 2 at 146; Records Order at 7. Petitioner also reported that L.P. often had loose stools multiple times daily. Records Order at 7; Pet. Ex. 2 at 147. The doctor agreed with the earlier diagnosis of cyclical vomiting and explained that L.P. might have toddler's diarrhea. Records Order at 7; Pet. Ex. 2 at 153.

The Special Master discussed her assessment of the medical records at the initial status conference held on May 8, 2017. *See* Order (May 8, 2017), ECF No. 9. Petitioner was to file a status report the following month, indicating if she wanted to proceed with the case, and was to check to see if the medical records needed to be updated or supplemented. *Id.* For three successive months, petitioner requested an extra month in which to obtain and review medical records, *see* Status Reports, ECF Nos. 10, 11, 13, and then concluded that the additional medical records would not support L.P.'s claim, Mot. for Enlargement, ECF No. 14.

Petitioner then moved for a decision dismissing the case. Pet'r's Mot. for Decision, ECF No. 17. She stated that "[a]n investigation of the facts and science supporting have demonstrated to Petitioner she will be unable to prove that she is entitled to compensation in the Vaccine Program," and acknowledged that "[i]n these circumstances, to proceed further would be unreasonable." *Id.* at 1. The following day, the Special Master issued a decision dismissing the case, containing a factual discussion that was repeated nearly verbatim from the Records Order. *See L.P. v. Sec'y of Health & Human Servs.*, No. 17-203V, 2017 WL 6419982, at *1–6 (Fed. Cl. Spec. Mstr. Nov. 21, 2017) [hereinafter Dismissal Decision].[1]

---

[1] The only apparent differences were the addition of footnote 7 and some grammatical changes.

Petitioner then moved for attorneys' fees and costs, initially requesting $9,110 in attorney and paralegal fees and the $400 filing fee. Pet'r's Appl. for Att'ys' Fees, ECF No. 19, at 2. The Secretary opposed the request, arguing that "petitioner has failed to establish a reasonable basis for her claim," and that the "claim never possessed a reasonable basis." Resp't's Opp'n to Pet'r's Mot. for Att'ys' Fees and Costs, ECF No. 21, at 2, 4. Petitioner filed a reply, maintaining that medical records showing a post-vaccination injury and the consideration of a looming statute of limitations amounted to a reasonable basis for the claim, and adding to the requested amount the $1,552.50 in attorneys' fees incurred in preparing the reply paper. Pet'r's Reply to Resp't's Resp., ECF No. 23, at 4–8. The Secretary then filed a short sur-reply, primarily focusing on the applicability of the Federal Circuit's decision in *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632 (Fed. Cir. 2017). *See* Resp't's Sur-reply, ECF No. 25, at 1–2.

The Special Master agreed with the Secretary and denied fees and costs. Fees Decision at *3. She noted that the *Simmons* decision "holds that a looming statute of limitations deadline has no bearing on whether there is an objective reasonable basis for the claim" filed in a petition. *Id.* (citing *Simmons*, 875 F.3d at 636). Instead, the "analysis must focus on whether there is evidentiary support for the claim set forth in the petition." *Id.* Finding in the medical records that "L.P. had gastroesophageal reflux disease, green stools, fussiness, and gas before he received his vaccinations," and that there was no support for a significant aggravation claim, the Special Master concluded that the claim in the petition lacked a reasonable basis. *Id.*

Petitioner then filed a motion for review of that decision, objecting to the Special Master's assessment of the medical records, her application of the reasonable basis standard, and her failure to take account of the looming statute of limitations deadline at the time the petition was filed. Pet'r's Mot. for Review, ECF No. 28, at 4–6, 11–14 (Pet'r's Mot.).[2] The Secretary responded, defending the Special Master's decision. Resp't's Mem. in Resp. to Pet'r's Mot. for Review (Response Br.), ECF No. 30, at 8–17. The Court has given careful consideration to the arguments in those papers, and closely reviewed the Special Master's decision and the medical records.

---

[2] Because petitioner combined her motion for review and her memorandum in support of the motion in one filing, with no internal pagination, *see* ECF No. 28 at 1, 6, the Court has adopted the convention of citing pages from either as being from the motion, and using the ECF pagination for filing ECF No. 28.

## II. DISCUSSION

### A. Legal Standards

Under the National Vaccine Injury Compensation Program, a petitioner whose claim fails on the merits may nevertheless seek "reasonable attorneys' fees and other costs." 42 U.S.C. § 300aa-15(e)(1) (2018). But the statute contains an important qualification. Fees and costs to an uncompensated petitioner may be awarded only "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." *Id.* Whether this petition was filed in good faith is not at issue. *See* Fees Decision at *3 ("There is no evidence that this petition was brought in bad faith."). Instead, the central question in this appeal is whether a "reasonable basis" for filing this Vaccine Act claim existed. *See* Pet'r's Mot. at 10.

The Federal Circuit has held that decisions regarding awards of attorneys' fees are to be reviewed under the abuse-of-discretion standard. *Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1356 (Fed. Cir. 2011) (citing *Pierce v. Underwood*, 487 U.S. 552, 558 (1988); *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993)). In cases where compensation is denied, the Vaccine Act "clearly gives" special masters "discretion over whether to make such an award." *Saxton*, 3 F.3d at 1520 (citing *Perreira v. Sec'y of Dep't of Health & Human Servs.*, 27 Fed. Cl. 29, 31 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994)).

A special master's "application of the law is reviewed *de novo*." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011). Absent a misapplication of law, "only if [a tribunal] erred in interpreting the law or exercised its judgment on clearly erroneous findings of material fact, or its decision represents an irrational judgment in weighing the relevant factors can its decision be overturned." *Chiu v. United States,* 948 F.2d 711, 713 (Fed. Cir. 1991); *see also Hendler v. United States*, 952 F.2d 1364, 1380 (Fed. Cir. 1991) ("An abuse of discretion may be found when (1) the court's decision is clearly unreasonable, arbitrary, or fanciful; (2) the decision is based on an erroneous conclusion of the law; (3) the court's findings are clearly erroneous; or (4) the record contains no evidence upon which the court rationally could have based its decision."). Generally, "reversible error is 'extremely difficult to demonstrate' if the special master 'has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision.'" *Lampe v. Sec'y of Health & Human Servs.*, 219 F.3d 1357, 1360 (Fed. Cir. 2000) (quoting *Hines ex rel. Sevier v. Sec'y of Health & Human Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991)).

## B. Analysis

In this case, in which petitioner alleged that her infant son suffered gastrointestinal injuries due to two vaccinations, Pet. at 1, the Special Master correctly noted that the medical records showed gastrointestinal problems prior to the vaccinations---gassiness, green stools, spitting up after feedings, blood in his diaper, and a diagnosis of gastroesophageal reflux disease. Dismissal Decision at *1; *see* Pet. Ex. 2 at 7, 17–18, 21–22. After petitioner was informed by the Special Master that the records showed neither a vaccine injury lasting six months nor a significant aggravation of L.P.'s preexisting gastrointestinal problems, Records Order at 1, Ms. Petty asked that her case be dismissed, because "she will be unable to prove that she is entitled to compensation" and thus "to proceed further would be unreasonable." Pet'r's Mot. for Decision at 1. She nevertheless maintains that she had a reasonable basis for filing the claim.

Petitioner contends that the Special Master's decision must be overruled because L.P.'s medical records contained information showing gastrointestinal injuries to L.P. manifesting the day following the DTaP and rotavirus vaccinations and lasting more than six months. Pet'r's Mot. at 11–13. She argues that the Special Master improperly employed the more stringent entitlement standard to determine the reasonableness of the claim. *Id.* at 13. Finally, petitioner notes that she contacted counsel about one month before the statute of limitations was due to expire, and counsel thus had a limited opportunity to review the records and determine if a claim could be proven. *Id.* at 14. Petitioner maintains that the timing of counsel's review supports the reasonableness of the filing of her claim.

For the reasons discussed below, the Court concludes that the Special Master did not abuse her discretion in determining that an award of fees and costs was inappropriate. First, the record contains evidence consistent with the Special Master's determination that no reasonable basis existed for bringing the claim---a determination which rests on plausible inferences and is explained in a rational manner. *See Lampe*, 219 F.3d at 1360. Moreover, the Special Master did not employ the wrong standard in making this determination. And finally, the Special Master was correct in concluding that a looming statute-of-limitations deadline has no impact on the question of whether a reasonable basis existed for bringing the claim.

### *1. The Special Master Did Not Err in Concluding That No Reasonable Basis Existed for Bringing the Claim.*

In objecting to the Special Master's denial of attorneys' fees and costs, petitioner stresses L.P.'s condition the day after the vaccination. *See* Pet'r's Mot. at 4, 11. She notes that "L.P. had been vomiting and choking, appeared lethargic and had a decreased appetite," and that his "father reported that [L.P.] had two to three

large projectile white vomits and medium liquid green stool." *Id.* at 12; *see also* Pet. Ex. 2 at 66. The diagnosis for L.P. was nausea and vomiting. Pet. Ex. 2 at 68. But even if this illness was caused by the vaccinations, a petition must demonstrate the suffering of "residual effects or complications of such illness, disability, injury, or condition for more than 6 months." 42 U.S.C. § 300aa-11(c)(1)(D)(i) (2018). The medical records show, however, that the vomiting lasted one day, Pet. Ex. 2 at 34, and the "severe diarrhea" lasted for two weeks, *id.* at 108; *see also* Pet. Ex. 3 at 9. In an attempt to show an injury lasting more than six months, Petitioner highlights a November 2, 2015 medical record, which contains her report to the doctor that L.P. "received his 2 month immunizations and developed diarrhea that lasted for 6 months." Pet. Ex. 3 at 1; *see* Pet'r's Mot. at 7, 12. This medical history report is not only contradicted by the other two reports stating L.P.'s diarrhea lasted two weeks, *see* Pet. Ex. 2 at 108; Ex. 3 at 9, but also by a medical record of a visit just two months after the vaccinations showing L.P.'s elimination was "normal," with "no concerns" by that time. Pet. Ex. 2 at 40. The Special Master reasonably concluded from these records that the injuries alleged to have been the immediate adverse reaction from the vaccinations did not last six months.

Petitioner suggests, however, that the medical records showing L.P.'s "intermittent emesis" and "loose stools" over the two-plus years following the vaccinations also support her vaccine injury claim. Pet'r's Mot. at 2. And she notes that L.P. was suffering from no gastrointestinal issues on the day he was vaccinated. *Id.* at 12–13; *see* Pet. Ex. 2 at 26–28. But by the time L.P. received his vaccinations, he already had a well-established medical history of gastrointestinal problems. At L.P.'s check-up when he was two weeks old, petitioner was concerned about green stools, gassiness, and excessive fussiness. Pet. Ex. 2 at 7. At four weeks old, L.P. remained fussy and would spit up after feeding. *Id.* at 17. And at seven weeks old, L.P. would spit up frequently after feedings, suffered from gas and had blood in his stool. *Id.* at 21. Thus, L.P. was diagnosed with gastroesophageal reflux disease prior to his vaccinations. *Id.* at 22.

With the medical records showing that L.P. suffered from gastrointestinal issues prior to the day he was vaccinated, and petitioner alleging that L.P.'s subsequent, intermittent gastrointestinal issues were caused by the vaccinations, *see* Pet. ¶¶ 11–20, the Special Master reasonably informed petitioner both that significant aggravation would need to be alleged in light of L.P.'s preexisting condition, and that the medical records accompanying the petition did not show a substantial deterioration of L.P.'s health, Records Order at 1. As petitioner herself concedes, "[b]ecause no further records were found to support a substantial deterioration of health, [she] moved for a dismissal." Pet'r's Mot. at 3. In denying the fees request, the Special Master rationally explained that "counsel should have realized through their review . . . that L.P.'s medical records do not support a

vaccine-related injury as alleged and [that] petitioner did not have a reasonable basis to bring her claim." Fees Decision at *3.

Whether a "reasonable basis" for a Vaccine Act claim exists "is an objective consideration determined by the totality of the circumstances." *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 303 (2011). Special masters will consider the factual basis and medical support underlying the claim to decide if it is reasonable. *Chuisano v. United States*, 116 Fed. Cl. 276, 288 (2014). It is incumbent on the petitioner to "affirmatively establish a reasonable basis to recover attorneys' fees and costs." *Id.* at 287. While the "burden is something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim," petitioners must furnish some support for their contentions. *Simmons v. Sec'y of Health & Human Servs.*, 128 Fed. Cl. 579, 583 (2016) (citations omitted), *aff'd*, 875 F.3d 632 (Fed. Cir. 2017).

As was described above, the Special Master rationally concluded that L.P.'s alleged reaction to the vaccinations, in the form of vomiting and severe diarrhea, did not last six months. And given L.P.'s preexisting gastrointestinal issues, the Special Master rationally found that petitioner would have to plead that L.P.'s condition was significantly aggravated by the vaccinations for the subsequent gastrointestinal injuries to be the basis for a claim. Under these circumstances, the Special Master acted well within her discretion in concluding that no reasonable basis existed for alleging a vaccine injury claim and thus denying the requested award of attorneys' fees. Petitioner has identified no medical record connecting the vaccinations to L.P.'s illnesses or condition more than six months after receiving the vaccinations, let alone any medical record suggesting that a substantial deterioration of his health resulted from the vaccinations. *Cf. Chuisano*, 116 Fed. Cl. at 290 (finding that no reasonable basis existed in a case where, *inter alia*, the decedent had preexisting medical conditions prior to the vaccination, the medical records attributed her death to those preexisting conditions, and treating providers were unwilling to attribute her injuries to her vaccination).

Instead, based on these records, petitioner acknowledged that "to proceed further would be unreasonable and would waste the resources of this Court, the Respondent, and the Vaccine Program." Pet'r's Mot. for Decision at 1. This is not a case in which the information initially available to a petitioner supported a vaccine claim, but subsequent information showed the claim not to be viable. *Cf. Perreira v. Sec'y of Dep't of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (finding that reasonable basis for claim ended upon review of expert opinion). If it was unreasonable to proceed further upon the basis of the medical records submitted with the petition, it was unreasonable to bring the claim in the first place.

Moreover, petitioner is incorrect in her contention that the Special Master's decision was based on the standard for proving entitlement rather than the reasonable basis standard. *See* Pet'r's Mot. at 13. The Special Master explained that she must look "more to the feasibility of the claim" and "not at the likelihood of success," and that factors such as "factual basis" and "medical support" needed to be considered. Fees Decision at *2 (citations omitted); *see also Chuisano*, 116 Fed. Cl. at 288) (citations omitted) (identifying factual basis and medical support as among the factors to be considered). After describing L.P.'s pre-vaccination condition, the Special Master noted that "[n]o post-vaccination record substantiates L.P. having a substantial deterioration of health." Fees Decision at *3. Under the circumstances, this would have been a sufficient basis for her exercise of the discretion which "the statute clearly gives" special masters when a petition is not successful, *Saxton*, F.3d at 1520. She further noted the absence of a causation theory or a medical expert report, *see* Fees Decision at *3, not to require that reasonableness be based on the entitlement standard, but to acknowledge additional means by which the reasonableness of a claim may be established, *see Carter v. Sec'y of Health & Human Servs.*, 132 Fed. Cl. 372, 380 (2017) (recognizing that expert opinions may be used to demonstrate reasonable basis of a claim). The Special Master properly considered whether there was a reasonable basis for a vaccine injury claim based on such elements as allegations of an injury or significant aggravation lasting more than six months and linked to a vaccination. *See* 42 U.S.C. § 300aa-11(c)(1); *Santacroce ex rel. J.R. v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018).

Based on this record, it was far from irrational or implausible for the Special Master to find that petitioner did not have a reasonable basis for bring her claim. The Special Master clearly considered all of the relevant medical records, drew plausible inferences and articulated a rational basis for denying the attorneys' fees request. *See Lampe*, 219 F.3d at 1360.

### *2. A Looming Statute of Limitations Deadline Has No Bearing on the Reasonableness of Filing a Vaccine Claim.*

Petitioner also contends that the Special Master erroneously failed to account for the fact that the statute of limitations was about to expire when petitioner's counsel reviewed the medical records and filed the petition. Pet'r's Mot. at 14. This argument, however, is squarely foreclosed by Federal Circuit precedent.

In *Simmons v. Secretary of Health and Human Services*, 875 F.3d 632, 634 (Fed. Cir. 2017), the Federal Circuit faced the question of whether counsel's inability to review a record due to a looming statute of limitations deadline should be considered in the reasonable basis analysis. Writing for the court, Chief Judge Prost began by noting that whether the reasonable basis requirement is met "is an objective inquiry unrelated to counsel's conduct." *Id.* at 636. The focus, therefore, is

- 10 -

on the claim itself---and whether a reasonable basis existed for bringing it. *Id.* Thus, the court held that "a looming statute of limitations deadline . . . has no bearing on whether there is a reasonable factual basis 'for the claim' raised in the petition." *Id.* (quoting 42 U.S.C. § 300aa-15(e)(1)).  As such, "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis" for filing a claim lacking in factual support. *Id.*  The amount of time left before a statute of limitations will run out is simply irrelevant to the reasonable basis determinations. *See Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018) (holding that "the Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines . . . in determining whether there was a reasonable basis for a claim").

Petitioner thus cannot use the looming statute of limitations deadline to support her argument that there was a reasonable basis for the filing of her claim. The Special Master was therefore correct in rejecting the statute of limitations argument, *see* Fees Decision at *3, and instead looking only to the medical records and allegations in deciding if the claim had an objectively reasonable basis.

### III.  CONCLUSION

For the foregoing reasons, the Special Master's denial of attorneys' fees and costs was not arbitrary, irrational, an abuse of discretion or otherwise unlawful. Petitioner's motion for review is hereby **DENIED** and the Special Master's decision is **SUSTAINED**.  The Clerk shall enter judgment accordingly.  No fees or costs are awarded.

**IT IS SO ORDERED.**

s/ Victor J. Wolski
**VICTOR J. WOLSKI**
Senior Judge